UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WOLF CONCEPT S.A.R.L,

                                Plaintiff,              07-CV-06233

                v.                                      **DECISION**
                                                        **and ORDER**

EBER BROS. WINE AND LIQUOR CORP.,
NATIONAL DISTRIBUTING COMPANY, INC.,
EBER-NDC, LLC, LESTER EBER and DAVID
EBER,

                                Defendants.
_____


## INTRODUCTION

Plaintiff Wolf Concept S.A.R.L, ("Wolf Concept" or "Plaintiff") brings this action pursuant to New York statutory and common law claiming that the remaining defendants in this case[1], Eber Bros. Wine and Liquor Corp. ("Eber Bros."), Eber-NDC, LLC ("Eber-NDC"), Lester Eber and David Eber ("The Ebers"), (all collectively referred to as the "Eber Defendants" or "Defendants") have conspired to unlawfully restrain trade and competition in violation of New York's Donnelly Act (New York General Business Law

---

[1] Plaintiff Wolf Concept S.A.R.L. originally commenced this action against the above-captioned defendants in the New York County Supreme Court. That action was removed to the United States District Court for the Southern District of New York before the Hon. Charles L. Brieant on or about October 26, 2006. In May, 2007, Judge Brieant dismissed the claims asserted against defendant National Distributing Company, Inc. ("NDC") by granting NDC's motion for summary judgment. See Wolf Concept S.A.R.L. v. Eber Bros., et al., 2007 U.S. Dist. LEXIS 32982, *6 (S.D.N.Y. 2007). Judge Brieant also granted the remaining defendants' motion to change venue to the United States District Court for the Western District of New York, where the case is now pending. See id.

§§ 340 - 347), tortiously interfered with Plaintiff's contractual relationships, and engaged in fraud and breach of contract.

The Eber Defendants move for judgment on the pleadings dismissing Plaintiff's Amended Complaint[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on grounds that Wolf Concept has failed to state any claims upon which relief can be granted. Specifically, the Eber Defendants contend that Plaintiff has: (1) failed to allege the necessary elements of a Donnelly Act claim; (2) failed to allege that the Eber Defendants used wrongful means to interfere with Plaintiff's contracts; (3) failed to plead its fraud claim with the requisite particularity required under Rule 9(b) of the Federal Rules of Civil Procedure; (4) improperly attempted to plead a fraud claim that is nothing more than a veiled breach of contract claim; and (5) failed to state a viable breach of contract claim because by its own terms, the underlying agreement automatically terminated. Wolf Concept opposes the Eber Defendants' Motion.

For the reasons set forth below, the Court grants the Eber Defendants' Motion in part and dismisses the First, Second, Third and Fourth Causes of Action set forth in the Amended Complaint, and denies the Defendants' Motion with respect to the Fifth Cause of Action for breach of contract. Thus, the only claim that remains

---

[2]   Following dismissal of the claims asserted against NDC and removal to this Court, Plaintiff filed an Amended Complaint against the remaining defendants - i.e., the Eber Defendants - on September 5, 2008.

is Plaintiff's breach of contract claim against defendant Eber Bros.

**BACKGROUND**

The following facts are not disputed or are presumed to be true for the purposes of the Court's analysis of the Defendants' Motion. Plaintiff Wolf Concept is a French company that manufactures and distributes premium vodka distilled in Holland and bottled in France. During the time at issue set forth in the Amended Complaint, Plaintiff had an exclusive, albeit temporary, license to use the name "Petrossian" and market an "ultra-premium" brand of European vodka known as "Petrossian Vodka."

Wolf Concept obtained this temporary license from Petrossian, Inc. and related Petrossian companies (hereinafter collectively "Petrossian, Inc.") by agreement dated July, 2004 (hereinafter the "Licensing Agreement"). The Licensing Agreement specifically references the relationship to be formed with Eber Bros. to distribute the vodka in New York State and Delaware (the "Territory")[3].

---

[3] Although not attached to the Amended Complaint, the Court may consider the Licensing Agreement in ruling on Defendants' Motion because the Licensing Agreement is referenced in the Amended Complaint, Plaintiff relied on it in bringing suit, and clearly Plaintiff knew of it when bringing suit. Moreover, it is integral to the Amended Complaint. See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991); see also, Mathis v. United Homes, LLC, 607 F.Supp.2d 411, 412 (E.D.N.Y. 2009) ("Although courts, in considering motions to dismiss for failure to state a claim . . ., are normally required to look only to the allegations on the face of the complaint, they may also consider documents that are attached to the complaint, or incorporated [by reference]; further, even if not attached or incorporated by reference, a document . . . which is integral to [the complaint] may be considered by [the court] in ruling on such motions.")

Petrossian Vodka had never before been sold in the U.S., but according to the Amended Complaint, the brand name "Petrossian" was well known and associated with luxury products around the world. According to Plaintiff, "[a]fter decades of advertising, marketing and product placement, the *Petrossian* brand had become well known in the Western world as a symbol of exclusivity, luxury and quality, and was identifiable and known to the general public in the same manner as *Rolls Royce* and *Mercedes*." (Am. Compl. ¶10).

Plaintiff sought a partner to help it distribute Petrossian Vodka in the U.S. market and selected the Eber Bros. due to its long and well established history as a wholesale distributor of wine and spirits, particularly in the New York Metropolitan area. The parties entered into an Importation and Distribution Agreement ("Distribution Agreement") in August, 2004.

The Distribution Agreement provided that Eber Bros. would exclusively import and use its "best efforts" to distribute Petrossian Vodka in the designated Territory. The Distribution Agreement also set forth desired "volume objectives" in which the agreement provided that the parties desired Eber Bros. to distribute at least 2500 cases of Petrossian Vodka by December 31, 2005.

Significantly, Wolf Concept's Licensing Agreement with Petrossian, Inc. provided Wolf Concept with a temporary license until December 31, 2005 for the purpose of marketing 2500 cases of

Petrossian Vodka in the Territory. (Licensing Agreement, Article 3). If 2500 cases could not be sold by Eber Bros. by that date, "[Petrossian, Inc.] and Wolf Concept [had] no further obligation to one another [and the Licensing Agreement] would lapse." (Licensing Agreement, Article 4). Additionally, if 2500 cases could not be sold by December 31, 2005, Wolf Concept was required to terminate the Distribution Agreement with Eber Bros. and buy back the remaining cases from Eber Bros. pursuant to Article 16 of the Distribution Agreement. (Id.).

Eber Bros. did not sell 2500 cases of Petrossian Vodka by December 31, 2005 because the vodka was allegedly not well received in the Territory. Therefore, Wolf Concept's temporary license agreement with Petrossian, Inc. expired and the Distribution Agreement with Eber Bros. was terminated.

Plaintiff commenced the instant action on October 6, 2006, and in its Amended Complaint alleges the following Causes of Action: In the First and Second Causes of Action, Wolf Concept alleges that the Eber Defendants engaged in an unlawful conspiracy to monopolize and restrain trade in violation of the Donnelly Act. In the Third Cause of Action, Plaintiff alleges that Eber-NDC engaged in actions causing tortious interference with a contract - i.e., the Distribution Agreement. In the Fourth Cause of Action, Plaintiff alleges a claim for fraud against The Ebers and Eber Bros.

Finally, in the Fifth Cause of Action, Wolf Concept alleges that
Eber Bros. breached the Distribution Agreement.

## DISCUSSION

## I.  Standard of Review of Rule 12(c) motion:

      A motion for judgment on the pleadings pursuant to Rule 12(c)
of the Federal Rules of Civil Procedure is evaluated under the same
standards that apply to a Rule 12(b)(6) motion to dismiss for
failure to state a claim.  <u>Patel v. Contemporary Classics of
Beverly Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001); <u>Caudle v. Towers,
Perrin, Forster & Crosby, Inc.</u>, 580 F.Supp.2d 273, 277 (S.D.N.Y.
2008).  Accordingly, when evaluating a Rule 12(b)(6) or Rule 12(c)
motion, the court must "accept . . . all factual allegations in the
complaint [as true] and draw . . . all reasonable inferences in the
plaintiff's favor." <u>See</u> <u>Ruotolo v. City of New York</u>, 514 F.3d 184,
188 (2d Cir. 2008) (internal quotation marks omitted).

      When a defendant tests the sufficiency of a complaint by
motion, "[t]o survive dismissal, the plaintiff must provide the
grounds upon which his claim rests through factual allegations
sufficient 'to raise a right to relief above the speculative
level.' " <u>ATSI Commc'ns, Inc. v. Shaar Fund. Ltd.</u>, 493 F.3d 87, 98
(2d Cir. 2007)(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S.
544, 570 (2007)).  In order to withstand dismissal, therefore, a
"complaint must contain sufficient factual matter, [], to 'state a

claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). This "does not require heightened fact pleading of specifics. . . ." <u>In re Elevator Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir.2007). It does, however, "require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.' " <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 557).

## II. Donnelly Act Claims

Plaintiff's First and Second Causes of Action against the Eber Defendants allege violations of the Donnelly Act (NY General Business Law §340 - §347). Plaintiff asserts that Defendants entered into unspecified agreements with the intent to unlawfully restrict Plaintiff's ability to sell or distribute its product, and further, that Eber Bros. conspired with NDC[4], through the Eber-NDC joint venture, to fraudulently obtain exclusive rights to distribute and sell Petrossian Vodka in order to strengthen their market position by excluding Petrossian from the market. (Am. Compl. ¶ 29). Plaintiff further asserts that this anti-competitive conduct has resulted in damage to its brand identity, lost business opportunities, and lost investments. (Am. Compl. ¶ 31).

---

[4] Even though Judge Brieant dismissed all claims against NDC, including all Donnelly Act claims, the Amended Complaint still makes reference to a Donnelly Act claim against NDC for a "conspiracy to monopolize." <u>See</u> Amended Complaint, ¶¶ 32-35, pp. 14,19. The instant decision concerns only the claims in the Amended Complaint asserted against the Eber Defendants.

The Eber Defendants move to dismiss the First and Second Causes of Action on the basis that the Amended Complaint fails to allege facts necessary to support the essential elements of a Donnelly Act claim. Further, the Eber Defendants assert that Plaintiff's claims seek damages for personal losses which do not result from the restriction of competition as a whole, claiming that the purpose of the Donnelly Act is to redress injuries to competition as a whole.

Even accepting all of the allegations set forth in the Amended Complaint as true, I find that Plaintiff has not set forth facts sufficient to establish the necessary elements of a Donnelly Act violation, including a relevant product market, a conspiracy that restrained trade in the relevant product market and an antitrust injury. As a result, the First and Second Causes of Action must be dismissed with prejudice.

### A. First Cause of Action: Agreement in Restraint of Trade

Under the Donnelly Act, any contract, agreement, or arrangement which forms a monopoly or restrains competition in trade is illegal. N.Y. Gen. Bus. Law § 340(1). A party alleging a violation of this act must "1) identify the relevant product market; 2) describe the nature and effects of the purported conspiracy; 3) allege how the economic impact of that conspiracy is to restrain trade in the market in question; and 4) show a conspiracy or reciprocal relationship between two or more

entities." <u>Altman v. Bayer Corp.</u>, 125 F. Supp. 2d 666, 672 (S.D.N.Y. 2000); <u>Shepard Industries, Inc. v. 135 East 57th Street, LLC</u>, 1999 WL 728641 (S.D.N.Y. 1999); <u>Watts v. Clark Associates Funeral Home, Inc.</u>, 234 A.D.2d 538, 538 (2d Dep't 1996). In this case, Plaintiff's antitrust claims fail because the Amended Complaint does not sufficiently plead two essential elements of a Donnelly Act claim: the relevant product market and an explanation of how the alleged conspiracy between Eber Bros. and Eber-NDC impacted or restrained trade in that relevant market.

Although no heightened pleading requirements apply in antitrust cases, a plaintiff must do more than cite relevant antitrust language to state a claim for relief. <u>Todd v. Exxon Corporation</u>, 275 F.3d 191, 198 (2d Cir. 2001)[5]. "A plaintiff must allege sufficient facts to support a cause of action under the antitrust laws. Conclusory allegations that the defendant violated those laws are insufficient." <u>Kasada, Inc. v. Access Capital, Inc.</u>, 2004 U.S. Dist. LEXIS 25257, *11-12 (S.D.N.Y. 2004)(internal citations and quotations omitted); <u>see also</u>, <u>Heart Disease Research</u>

---

[5] Although the <u>Todd</u> case concerns violations of the Sherman Act, the Donnelly Act is generally construed in accordance with the Sherman Act. <u>See</u> <u>Re-Alco Indus., Inc. v. National Center for Health Education</u>, 812 F.Supp. 387, 393 (S.D.N.Y. 1993). The Sherman Act and the Donnelly Act require identical basic elements of proof for claims of monopolization or attempt to monopolize, and the Donnelly Act was modeled after the Sherman Act. <u>See</u> <u>New York v. Mobil Oil Corp .</u>, 38 N.Y.2d 460 (1976). Indeed, the Court of Appeals has held that Donnelly Act claims should be construed in light of federal Sherman Act precedent. <u>See</u> <u>X.L.O. Concrete Corp. v. Rivergate Corp.</u>, 83 N.Y.2d 513, 518 (1994). Therefore, this decision relies on cases interpreting claims under both acts as authority.

Foundation v. General Motors Corp., 463 F.2d 98, 100 (2d Cir. 1972)("a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal.")

**Product Market**

"The first step in a court's analysis must be a definition of the relevant market . . . because [w]ithout a definition of that market, there is no way to measure [a defendant's] ability to lessen or destroy competition." Shepard Industries, Inc. v. 135 East 57th Street, LLC, 1999 WL 728641, *3 (quoting Pepsico, Inc. V. Coca-Cola Co., Inc., 1998 WL 547088 *3 (S.D.N.Y. 1998). Defining the relevant product market requires consideration of "cross-elasticity of demand" between products, which measures "the extent to which consumers will change their consumption of one product in response to a price change in another." Pepsico, 1998 WL 547088, *5, (citing, Eastman Kodak v. Image Tehcincal Servs., 504 U.S. 451, 469 (1992)). In other words, "[i]f customers are able to substitute one product [] in response to a nontrivial increase in price of another, these products [] fall within the same product market." Id.

For antitrust purposes, therefore, the plaintiff must allege facts regarding substitute products, or distinguish among apparently comparable products, or allege other pertinent facts relating to "cross-elasticity of demand," otherwise, a court may dismiss the complaint. See Shepard, 1999 WL 728641, *3. In this

case, there is no identification of the relevant product market. There is no identification of comparable, substitute products with which Petrossian Vodka competes, or products that consumers could choose in lieu of Petrossian Vodka.

The Amended Complaint only refers to Petrossian Vodka as an "ultra-premium" luxury brand, and it merely avers that Eber Bros. purposely kept it out of the market place because Eber Bros. is the distributor for "competitive" brands. (Am. Compl. ¶29 - 31). Yet the Amended Complaint neither identifies these competitors nor explains how Eber Bros.' conduct would affect the relevant product market in the Territory. These flaws are fatal to an antitrust claim. See Wolf Concept v. Eber Bros., 2007 U.S. Dist. LEXIS 32982, *6 ("Plaintiff failed to show how exclusion of Petrossian vodka would affect the market for premium vodka in New York, a necessary element of a claim under the Donnelly Act."); see e.g., Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc., 34 A.D.3d 91, 94-95(2d Dep't 2006) ("Plaintiff's failure to allege a [] product market is thus fatal to its Donnelly Act claim.") Accordingly, Plaintiff's First Cause of Action must be dismissed.

### B. Second Cause of Action: Conspiracy to Monopolize

In Plaintiff's Second Cause of Action, Wolf Concept claims the that the Defendants engaged in a conspiracy to monopolize the ultra-premium vodka market in violation of the Donnelly Act. In

particular, Plaintiff alleges that the Eber Defendants, "pursuant to a plan or arrangement, improperly, maliciously and unlawfully attempted to, did and continue to improperly influence the relevant market, to wit: [the] premium and ultra-premium vodka market . . ." (Am. Compl. ¶ 33).

To establish a claim of conspiracy to monopolize, a plaintiff must allege facts sufficient to support (1) concerted action; (2) overt acts in furtherance of the conspiracy; and (3) specific intent to monopolize. Kramer v. Pollock-Krasner Foundation, 890 F.Supp. 250, 255 (S.D.N.Y. 1995). As noted by Judge Brieant, Plaintiff's claim of conspiracy to monopolize apparently rests on the following: "Plaintiff and NDC each entered into an agreement with Eber Bros. within six months of each other; Eber Bros. did not sell much of Plaintiff's product; and therefore there must have been [a] conspiracy between NDC and Eber Bros. to restrain the sale of Plaintiff's product." Wolf Concept S.A.R.L., 2007 U.S. Dist. LEXIS 32982, *6 (holding this is insufficient to state a claim under the Donnelly Act and granting NDC's motion for summary judgment).

Here, Plaintiff fails to allege facts which, even when taken as true, establish that the Eber Defendants engaged in concerted, overt acts with the specific intent to achieve an unlawful monopoly. Plaintiff merely alleges that Eber Bros. and Eber-NDC conspired to "freeze" Petrossian Vodka out of the New York and

Delaware markets to boost its market power. (Am. Compl. ¶¶ 24-27, 34). Other than this conclusory (and oft repeated) allegation, however, there are no facts that: describe Eber-NDC's and Eber Bros.' conspiratorial conduct; explain how this purported conspiracy created an unlawful monopoly in the premium vodka market, and/or describe how this alleged conspiracy economically impacted the premium vodka markets in New York City and Delaware and restrained trade. Plaintiff's use of antitrust buzzwords and rhetoric, in the absence of factual allegations, is not enough to raise Plaintiff's "right to relief above the speculative level." Twombly, 550 U.S. at 555. Without facts to support the basic elements of a conspiracy claim under the Donnelly Act, Wolf Concept's Second Cause of Action fails to state a claim and is therefore dismissed with prejudice.

### C. Plaintiff Lacks a Specific Antitrust Injury

Moreover, to state a plausible claim for an antitrust violation, Plaintiff must allege that the challenged action had "an actual adverse effect on competition as a whole in the relevant market." Kasada, 2004, U.S. Dist. LEXIS 25257, *23 (S.D.N.Y. 2004). Alleging injury as an individual competitor within the market does not suffice to state a claim for an antitrust injury as antitrust statutes were enacted to protect competition and not individual competitors. See George Haug Co. v. Rolls Royce Motor Cars, 148 F.3d 136, 139 (2d Cir. 1998); Bennett v. Cardinal Health

Marmac Distribs., 2003 U.S. Dist. LEXIS 12883, *11 (E.D.N.Y. 2003).
Although "plaintiff may have been deprived of certain [profits] as
a result of [defendants'] practice[s], [those] losses are clearly
not tantamount to injury to competition in the market as a whole
and thus do not constitute a cognizable claim under the Donnelly
Act." Victoria T. Enterprises, Inc. v. Charmer Industries, Inc.,
63 A.D.3d 1698, 1699 (4th Dep't 2009).

Here, even accepting Wolf Concept's allegations as true, it
has failed to allege that the conduct complained of had an adverse
effect on competition in the relevant product market as a whole.
Rather, it is clear from the Amended Complaint that Plaintiff's
main objective is to recover damages from the Eber Defendants as a
result of Plaintiff's personal losses - i.e., its loss of the
temporary license from Petrossian, Inc., and lost profits, business
opportunities, etc. (Am. Compl. ¶31). "[A] plaintiff [is
obligated] to demonstrate, as a threshold matter, that the
challenged action has had an actual adverse effect on competition
as a whole in the relevant market; to prove it has been harmed as
an individual competitor will not suffice." George Haug Co., Inc.,
148 F.3d at 139. Furthermore, "it is not . . . proper to assume
that the [plaintiff] can prove facts that it has not alleged or
that the defendants have violated the antitrust laws in ways that
have not been set forth in the complaint." Id.

Based on the foregoing, therefore, the Plaintiff's First and Second Causes of Action for Donnelly Act violations must be dismissed with prejudice.

## III.  Tortious Interference Claim

In its Third Cause of Action, Plaintiff contends that defendant Eber-NDC intentionally and unlawfully induced defendant Eber Bros. to breach the Distribution Agreement.  This claim must also be dismissed because the Amended Complaint fails to set forth the integral elements of a claim for tortious interference.

To state a claim for tortious interference with contractual relations, a plaintiff must allege (1) the existence of a valid, enforceable contract between plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) defendant's intentional inducement of a breach by the third party to the contract; and (4) resulting damages.  <u>NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.</u>, 87 N.Y.2d 614, 620-21 (1996).

In the instant case, assuming *arguendo* that the contract between Wolf Concept and Eber Bros. was actually breached, Plaintiff failed to allege knowledge of the Distribution Agreement by Eber-NDC and an intentional inducement of a breach of that agreement.  Plaintiff only states that "Eber-NDC intentionally and maliciously procured, or participated in the procurement of, the breach of the [Distribution] Agreement by Eber Bros." (Am. Compl. ¶ 39).  This amounts to nothing more than "a formulaic recitation

of the elements of [the] cause of action" and does not suffice to survive a motion for judgment on the pleadings. <u>Twombly</u>, 550 U.S. at 555; <u>see also</u>, <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007) (plaintiff must "amplify a claim with some factual allegations . . . to render the claim plausible.") Accordingly, Plaintiff's Third Cause of Action for tortious interference with a contract must be dismissed with prejudice because it fails to state facts sufficient to support the necessary elements.

## IV. Fraud Claim against The Ebers and Eber Bros.

Plaintiff's Fourth Cause of Action asserts that the Ebers made intentional and deliberate misrepresentations of material fact upon which Wolf Concept detrimentally relied. In particular, Plaintiff claims that The Ebers made material misrepresentations regarding the strength and financial health of their company, the absence of any conflicts of interest, and misrepresented their intention to carry through with the terms of the Distribution Agreement. As a result of these misrepresentations, Wolf Concept alleges it was induced into an agreement with Eber Bros. and "ceded" its valuable licensing rights to them. (Am. Compl. ¶¶ 38, 39).

The Eber Defendants seek dismissal of the Fourth Cause of Action on the basis that it is not pled with the requisite particularity required under Rule 9(b) of the Federal Rules, and further, the fraud claim is nothing more than a veiled breach of contract claim. The Eber Defendants contend that the Fourth Cause

of Action should be dismissed because it arises out of the same facts and circumstances which support the breach of contract claim, and therefore, it is duplicative.

Again, assuming *arguendo* that Plaintiff's fraud claim is sufficiently pled for purposes of Rule 8 and 9(b) of the Federal Rules of Civil Procedure, Plaintiff's Fourth Cause of Action must nevertheless be dismissed.

The Fourth Cause of Action is nothing more than a breach of contract claim disguised as fraud. See <u>Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.</u>, 2003 U.S. Dist. LEXIS 18531, *12-15 (W.D.N.Y. 2003). "It is well settled under New York law that a contract action cannot be converted into one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." <u>Id.</u>; <u>see also</u>, <u>Telecom Int'l America, Ltd. v. AT&T Corp.</u>, 280 F.3d 175, 196 (2d Cir. 2001) ("Under New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.")

Here, the crux of Plaintiff's claim is the purported intentional failure of The Ebers and Eber Bros. to perform its contract with Wolf Concept. Indeed, the Amended Complaint states,

"The Ebers did virtually nothing to advertise, promote and market the Petrossian product" (Am. Compl. ¶44), and "[n]either [of The Ebers] nor Eber Bros. had any intent of performing [the Distribution Agreement] when it was executed . . . The only intent [T]he Ebers and their company had was to suppress the Petrossian product from the market and eliminate a competitive produce (sic) in accordance with their arrangement with NDC." (Id.).

Clearly, the fraud claim simply recasts the breach of contract claim by adding that the Eber Defendants never intended to perform the contract with Plaintiff. This is insufficient to state and support a claim for fraud. Accordingly, the Fourth Cause of Action is dismissed with prejudice.

## IV.  Breach of Contract

Plaintiff's Fifth Cause of Action alleges breach of contract against Eber Bros. for, *inter alia*, failing to use its "best efforts" to promote sales and adequately advertise and/or promote Petrossian Vodka. (Am. Compl. ¶49). The Eber Defendants argue that this claim should be dismissed because the Distribution Agreement terminated by its very terms as soon as Wolf Concept's temporary license from Petrossian, Inc. expired in December, 2005. According to Defendants, the existence of a valid, operative license was a "condition subsequent" to the Distribution Agreement, the expiration of which meant the contract could be set aside and the parties no longer had binding obligations to each other.

Moreover, Defendants argue that the requirement that Eber Bros. use its "best efforts" to market and distribute Petrossian Vodka was too vague and indefinite to be enforceable, and, in order for a contract to be enforceable, all material terms must be definite and explicit.

As an initial matter, accepting Plaintiff's allegations as true, the Licensing Agreement and the Distribution Agreement expired or terminated due to Eber Bros. material breach in not selling 2500 cases of Petrossian Vodka by December 31, 2005. Accordingly, even though the agreement(s) between the parties may have come to an end, if a material breach was the cause of that end, it is an actionable breach.

Additionally, a "best efforts" clause in a contract may be enforceable, so long as there is some definite, measurable standard and a clear set of guidelines against which to measure the defendant's efforts. See Bloor v. Falstaff Brewing Corp., 454 F.Supp. 258, 266-267 (S.D.N.Y. 1978), aff'd, 601 F.2d 609 (2d Cir. 1979) (The term "best efforts" necessarily takes its meaning from the circumstances, and under a distribution contract, it is measured against the distributor's capabilities and prior merchandising of other similar products). The function of the Court at this stage, however, is not to determine whether Eber Bros. sufficiently used its "best efforts" to perform under the terms of the Distribution Agreement. The only concern for the

Court at this juncture is whether Plaintiff stated a plausible claim for breach of contract.

To state a claim for breach of contract, the plaintiff must allege facts sufficient to show: "(1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages attributable to the breach." <u>Alesayi Beverage Corp. v. Canada Dry Corp.</u>, 947 F.Supp. 658, 667 (S.D.N.Y. 1996) (citing, <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522 (2d Cir. 1994)).

Here, Wolf Concept has stated a viable claim for breach of contract. There is no dispute that the parties entered into a contract (the Distribution Agreement) for the distribution of 2500 cases of Petrossian Vodka, which was not accomplished. Wolf Concept asserts that Eber Bros.' failure to distribute 2500 cases is evidence of its material breaches of the Distribution Agreement, including, *inter alia*, its failure to use its best efforts to advertise, promote, market and otherwise distribute the amount agreed. (Am. Compl. ¶49). Eber Bros. alleged material breaches also purportedly led to Wolf Concept's direct and consequential damages, such as loss of the temporary license from Petrossian, Inc., lost profits, lost business opportunities, etc. (Am. Compl. ¶50).

Clearly, Plaintiff has stated a claim for breach of contract. Accordingly, the Eber Defendants' Motion to dismiss the Fifth Cause of Action for breach of contract is denied.

## CONCLUSION

For the reasons set forth above, the Eber Defendants' Motion to Dismiss is granted in part and denied in part, as follows:

(1) The Eber Defendants' Motion to Dismiss Plaintiff's First and Second Causes of Action asserted against all Defendants for violation of the Donnelly Act is granted with prejudice;

(2) The Eber Defendants' Motion to Dismiss Plaintiff's Third Cause of Action for Tortious Interference asserted against Eber-NDC and Eber Bros. is granted with prejudice;

(3) The Eber Defendants' Motion to Dismiss Plaintiff's Fourth Cause of Action for Fraud asserted against The Ebers and Eber Bros. is granted with prejudice;

(4) The Eber Defendants' Motion to Dismiss Plaintiff's Fifth Cause of Action for Breach of Contract asserted against Eber Bros. is denied.

Therefore, all that remains of Plaintiff's claims as alleged in the Amended Complaint is the breach of contract claim against Eber Bros. Wine and Liquor Corp.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
Michael A. Telesca
United States District Judge

DATED: August 17, 2010
       Rochester, New York